AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Kansas

FILED
U.S. District Court
District of Kansas

NOV 2 0 2018

Clerk, U.S. District Court
By _____ Deputy Clerk

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | ) Case No. |
| Cellular Telephone assigned call number (316) 651-7920 (TARGET TELEPHONE #4) | ) 18-6197-GEB |
| | ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A.

located in the _____ District of _____ Kansas _____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 | Drug Trafficking |
| 21 U.S.C. § 843 | Use of a communication facility to facilitate a drug trafficking crime. |
| See Affidavit for additional. | |

The application is based on these facts:

See attached, Affidavit.

☑ Continued on the attached sheet.

☑ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Thomas Krausch, TFO DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 20 Nov. 18

_____
*Judge's signature*

City and state:  Wichita, KS

Gwynne E. Birzer, U.S. Magistrate Judge
*Printed name and title*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF | ) |
| THE UNITED STATES FOR AUTHORIZATION | ) |
| TO OBTAIN LOCATION DATA CONCERNING | ) |
| AN AT&T CELLULAR TELEPHONE | ) |
| WITH ASSIGNED CALL NUMBER | ) |
| **(316) 651-7920** AND IMSI 310410922636708, | ) |
| **(TARGET TELEPHONE #4)** | ) |

**AFFIDAVIT IN SUPPORT OF APPLICATION**

I, Thomas Krausch, having been duly sworn, state the following:

1.      I am currently assigned to the Drug Enforcement Administration (DEA) Wichita

Resident Office.  Before my assignment with the DEA as a Task Force Officer I was

assigned to the Special Investigations Undercover/Narcotics Section, Robbery

Investigations, and the Exploited and Missing Child Unit. I have been employed with the

Wichita Police Department (WPD) since March 1990.  During that time I have

investigated numerous narcotics cases.

2.      While assigned with the DEA, and previously as a police officer with the WPD, I

have participated in numerous drug investigations, involving the unlawful manufacture of

controlled substances, possession of controlled substances with the intent to distribute,

distribution of controlled substances (including cocaine, marijuana and

methamphetamine) and conspiracies associated with criminal drug trafficking offenses, in

violation of Title 21, United States Code, Section 841(a)(1) Possession with Intent to

Distribute and Distribution of Controlled Substances; Section 843(b) Unlawful use of a

Communication Device to Commit or Facilitate the Commission of Drug Trafficking

Offenses; Section 846 Conspiracy or Attempt to Commit Drug Trafficking Offenses;

Sections 952 and 960 Importation of Controlled Substances; and Title 18, United States

Code 1956 & 1957, money laundering.  In connection with my official DEA duties, I

investigate criminal violations of the Controlled Substances Act.

3.      My training and experience has involved, among other things, (a) the debriefing of

defendants, witnesses, and informants, as well as others who have knowledge of the

distribution and transportation of controlled substances and of the laundering and

concealment of proceeds of drug trafficking; (b) surveillance; (c) execution of search

warrants; (d) the arrest of drug traffickers, and (e) handling of cooperating sources and

other sources of information.

4.      Based on my training and experience as a DEA TFO and officer with the WPD, I

have become familiar with the manner in which drug traffickers conduct their drug

related businesses, including the methods employed by drug dealers to import and

distribute drugs, and their use of coded language to refer to drugs, drug proceeds, and

other aspects of drug trafficking.  I have received training for the investigation of drug

offenses and have been personally involved in several drug trafficking investigations.

Through these investigations, my training, experience, and conversations with

experienced agents, other drug investigators and law enforcement personnel, I have

become familiar with the methods employed by drug traffickers in general, including the

use of wireless communications technology such as cellular telephones, counter

surveillance, and the use of false or fictitious identities and coded communications in an

attempt to avoid detection by law enforcement and to circumvent drug investigations.

5.     I am an investigator or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code; that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

6.     The Drug Enforcement Administration ("DEA") is conducting a criminal investigation of the CASTRO Drug Trafficking Organization (DTO), Felipe CASTRO, Brittany GORANS, Saoly SOUVANNAKILY and other, as yet unknown, individuals in connection with possible violations of Title 21, United States Code, Section 846 – conspiracy to distribute controlled substances; Section 843(b) – use of communication facilities in drug trafficking; Title 18, United States Code, Section 1952 – interstate travel in aid of racketeering activity; and title 18, United States Code, Sections 1956 and 1957 – money laundering.  I submit this affidavit in support of an application for a search warrant pursuant to Title 18 U.S.C. 2703(c)(1)(A) and Rule 41, directing VERIZON and AT&T to assist agents of the DEA by providing all information, facilities, and technical assistance needed to ascertain the physical location of the cellular telephone assigned call number:

> **A. (316) 651-7920,** bearing **IMSI 310410922636708,** utilized **by FELIPE CASTRO** with service provided to the cellular telephone by AT&T (hereafter referred to as **TARGET TELEPHONE #4**).

7.     The information requested includes, but is not limited to, E-9 Phase II data or other precise location information concerning the **TARGET TELEPHONE** (hereafter referred

to as the "Requested Information")[1] for a period of thirty (30) days.

## PROBABLE CAUSE

8.     I have personally participated in the investigation set forth below.  I am familiar

with the facts and circumstances of the investigation through my personal participation;

from discussions with other agents of the DEA and other law enforcement; from my

discussions with witnesses involved in the investigation; and from my review of records

and reports relating to the investigation.  Unless otherwise noted, wherever in this

Affidavit I assert that a statement was made, the information was provided by another

DEA agent, law enforcement officer or witness who may have had either direct or

hearsay knowledge of that statement and to whom I or others have spoken or whose

reports I have read and reviewed.  Such statements are among many statements made by

others and are stated in substance and in part unless otherwise indicated.  Because this

affidavit is being submitted for the limited purpose of securing an order authorizing the

acquisition of the requested information, I have not included details of every aspect of

this investigation.  Facts not set forth herein are not being relied on in reaching my

conclusion that the requested order should be issued.  In addition, I am not requesting that

---

[1]Such information shall, where other information is unavailable, include records reflecting the tower and antenna face ("cell site") used by the TARGET TELEPHONE at the start and end of any call.  In requesting cell site information, the government does not concede that such cell site records - routinely retained by wireless carriers as business records - may only be obtained via a warrant issued on probable cause.  *See In re Application*, 460 F. Supp. 2d 448 (S.D.N.Y. 2006) (authorizing prospective acquisition of cell site records under combined authority of 18 U.S.C. 2703(d) & 3121 et seq.).

this Court rely on any facts not set forth herein in reviewing this application.

9.      Probable cause exists to believe that the requested information will lead to evidence of offenses involving the violation of Title 21, United States Code, Section 846 – conspiracy to distribute controlled substances; Section 843(b) – use of communication facilities in drug trafficking; Title 18, United States Code, Section 1952 – interstate travel in aid of racketeering activity; and Title 18, United States Code Sections 1956 and 1957 – money laundering (hereafter referred to as the **"TARGET OFFENSES"**), as well as the identification of individuals who are engaged in the commission of these offenses.

10.     During the month of January 2018, agents from the DEA Wichita Resident Office (WRO) received information from a DEA Confidential Source (CS) providing information to agents related to a **Felipe CASTRO,** a poly-drug source of supply and distributor for cocaine, prescription pills, and marijuana in Wichita, Kansas.  Through a mutual acquaintance, the CS provided information that **CASTRO** supplies the aforementioned drugs to an associate who then sells them to employees at a Wichita area business.  The CS has provided agents with accurate and corroborated information regarding the poly-drug trafficking activities of **CASTRO** conducting his drug trafficking activities in Wichita, Kansas and surrounding counties and leading WRO agents to initiate an investigation into **CASTRO** and his drug dealing activities.

11.     During January 2018, the CS was put in contact with **CASTRO** through a mutual acquaintance.  The CS was in communication with **CASTRO** via **TARGET Telephone #4** and later the CS met with **CASTRO** during an introductory meeting during which the CS and **CASTRO** discussed future purchases of cocaine by the CS with **CASTRO**

explaining to the CS that he does not normally sell less than 4 oz. of cocaine at a time, adding that he, **CASTRO** typically does not make money on his product unless he is distributing ¼ kilograms of cocaine at a time..  On or about January 20, 2018, the CS provided agents with further information related to **CASTRO's** drug distribution activities which also included another cell phone number of 316-779-3084. Through indices checks, agents were able to corroborate information and verify **TARGET TELEPHONE #4,** and phone 316-779-3084, as being the numbers utilized by **CASTRO**.

12.     On or about January 30, 2018, the CS communicated with **CASTRO** and later the same day met with **CASTRO** during which **CASTRO** sold the CS 2 oz. of cocaine for $2,600 during a meeting observed and monitored by agents in which drug activities were discussed and took place amongst the two.  Prior to the meeting, the CS contacted/ communicated with **CASTRO** on cell phone 316-779-3084.

13.     On or about February 13, 2018, the CS again communicated with **CASTRO** and later met with **CASTRO** the same day during which CS again purchased 2 oz. of cocaine from CASTRO for $2,600, during a meeting observed and monitored by agents in which drug activities were discussed and took place amongst the two.  Prior to the meeting, the CS contacted/communicated with **CASTRO** via cell phone 316-779-3084.

14.     On or about May 10, 2018, **CASTRO** ceased using cell phone number 316-779-3084. He began using cell phone number 316-648-5679. The CS informed investigators that **CASTRO** contacted the CS with this new cell phone number and instructed the CS to contact **CASTRO** on the new number if the CS needed to do something. The CS clarified

that **CASTRO** was letting the CS know that if the CS was in need of more cocaine to contact **CASTRO** on the new cell phone number.

15.     On or about June 21, 2018, the CS communicated with **CASTRO** utilizing cell phone number 316-648-5679. The CS met with **CASTRO** later the same day. During this meeting, the CS purchased two (2) ounces of cocaine from **CASTRO** for $2,400. This meeting was observed and monitored by agents during which drug activities were discussed and took place between the CS and **CASTRO**.

16.     On or about July 24, 2018, **CASTRO** ceased using cell phone number 316-648-5679 in lieu of a new cell phone number 316-201-8330. CS informed investigators that **CASTRO** contacted the CS with the new cell phone number, 316-201-8330, and instructed the CS to contact **CASTRO** on the new number if the CS needed anything.  The CS clarified that **CASTRO** was letting the CS know that if the CS was in need of more cocaine to contact **CASTRO** on the new cell phone number.

17.     On or about August 2, 2018, the CS had contacted **CASTRO** on cellphone number 316-201-8330. Later that day the CS met with **CASTRO** and purchased a ¼ kilo of cocaine for $8,800.00.  This meeting was observed and monitored by agents during which drug activities were discussed and took place between the CS and **CASTRO.**

18.     On or about August 20, 2018, **CASTRO** ceased using cell phone number 316-201-8330 in lieu of new cell phone number 316-201-7677. The CS informed investigators that **CASTRO** contacted the CS with this new cell phone number and instructed the CS to contact **CASTRO** on it if the CS needed anything.  The CS clarified that **CASTRO** was

letting the CS know that if the CS was in need of more cocaine to contact **CASTRO** on the new cell phone number.

19.     On or about August 21, 2018, the CS communicated with **CASTRO** utilizing 316-201-7677. Later that day the CS met with **CASTRO** and purchased two (2) ounces of cocaine for $2,500.00.  This meeting was observed and monitored by agents during which drug activities were discussed and took place between the CS and **CASTRO.**

20.     Over the course of the next several weeks **CASTRO** informed the CS that cocaine was hard to come by and that any cocaine that **CASTRO** was getting was poor quality and informed the CS to be patient, that **CASTRO** would let the CS know if he had anything better then what he was getting.

21.     On or about September 17, 2018, **CASTRO** communicated with the CS via 316-201-7677.  **CASTRO** informed the CS that **CASTRO** was going to look at some cocaine and would be in contact with the CS. Approximately one hour later on September 17, 2018, **CASTRO** notified the CS it was good and that **CASTRO** had to pay an extra two thousand dollars for the product then he normally pays. The CS and **CASTRO** arranged to meet then following day.

22.     On September 18, 2018 at the direction of the WRO the CS met **CASTRO** and purchased four ounces of cocaine for $4800.00. The CS was in contact with **CASTRO** through 316-201-7677.

       a.  During agents' investigation, the CS provided agents with the numbers used by the CS to contact **CASTRO**, and agents verified the following phone numbers for **CASTRO**:

8

    i.   CS provided phone **TARGET TELEPHONE #4** as belonging to **CASTRO;**

   ii.   CS provided phone number 316-779-3084 as belonging to **CASTRO;**

  iii.   CS provided phone number 316-201-8330 as belonging to **CASTRO;**

  iv.   CS provided phone number 316-201-7677 as belonging to **CASTRO.**

23.    Toll analysis has showed that **TARGET TELEPHONE #4** has been in contact with numbers belonging to criminal associates of **CASTRO** discovered by agents during their investigation and utilized by the CS to communicate with **CASTRO**.

24.    Although **TARGET TELEPHONE #4** was the initial phone used to communicate with the CS, **CASTRO** has used several numbers since that time to conduct drug transactions with the CS. Throughout the course of the investigation your Affiant has conducted phone toll analysis and has issued numerous phone subpoenas to providers for the phones associated to **CASTRO.**

25.    As a result of information obtained from the CS as well as other sources of information, it was believed that **CASTRO** is using numerous cellular devices to conduct illegal activity. Based on that information your Affiant applied for and was granted a search warrant signed by the Honorable Kenneth G. Gale, U.S. Magistrate Judge on September 13, 2018 for the deployment of the cell site simulator to capture devices used by Felipe **CASTRO**. The cell site simulator was administered during surveillance on September 18, 2018 and as a result **TARGET TELEPHONE #4** was identified as an active cellular device and captured at multiple locations consistent with locations visited by **CASTRO**. Although the deployment of the cell site simulator was successful in

capturing the **TARGET TELEPHONE#4,** cell phone 316-201-7677 was not captured at the time of deployment. Investigators with the DEA however, were in close vicinity to **CASTRO** at the time the cell site simulator was being utilized.   During that time, investigators in the presence of the CS observed that the CS had received a text message from **CASTRO** from 316-201-7677 at the same time additional investigators observed **CASTRO** getting into his BMW.  It is of the opinion of investigators that **CASTRO** somehow has cell phone number 316-201-7677 synced with his active On-Star account. **CASTRO** through communication with the CS on 316-201-7677 met with the CS later that day on September 18, 2018 and sold the CS the four ounces of cocaine as stated above in paragraph 22.

26.     Investigators have conducted pre and post buy surveillance on **CASTRO** on several occasions.  During surveillance investigators have lost visual contact on **CASTRO** due to high traffic volume as well as **CASTRO'S** driving habits.  This has made it difficult for investigators to identify possible locations used by **CASTRO** to facilitate his illegal activity, as well as identify other co-conspirators acting with the **CASTRO DTO**.

27.     On October 15, 2018 investigators attempted to conduct surveillance on a subject identified as a possible source of supply to **CASTRO** at a residence in the 1400 block of N. Gow Street in Wichita Kansas. Two male subjects were observed at the rear of the address near a couple vehicles.  As investigators were conducting surveillance, both subjects got into a white Chevy pick-up truck and departed.  The subjects conducted counter surveillance on investigators driving directly to the location of one of the investigators vehicles. The white Chevy pickup drove by one of the investigators vehicles

very slowly attempting to see inside. The pickup then turned around and drove back by it a second time before returning back to the residence.

28.     Through extensive phone toll analysis, investigators learned that the subject living in the area of 1400 N. Gow Street had previously been arrested on a T-III investigation in 2009 for possession of cocaine and was sentenced to five years in prison. The CASTRO DTO's use of counter surveillance on investigators makes traditional means of surveillance much more difficult to monitor **CASTRO** and his DTO members.

29.     Investigators had also deployed the use of a poll camera in the area of **CASTRO's** residence.  The pole cam offered limited intelligence as to what, if any criminal activity **CASTRO** was involved in due to the poor location of the camera placement. During the time the pole cam was in place, investigators requested a maintenance inspection of the camera due to lack of signal.  During an inspection investigators learned that an unknown individual had cut the power source to the camera.  Further inspection of the pole camera revealed that the camera had possibly been shot at by an unknown type weapon possibly a BB gun.  The pole cam was removed at the request of investigators.

30.     Through your Affiants years of training and experience, your Affiant knows it to be a common practice by those involved in the distribution of illegal narcotics to utilize several cellular telephones.  It is also common for those involved in the distribution of illegal narcotics to contact suppliers on one phone and customers on another.  It is apparent through phone toll analysis that **CASTRO** is utilizing **TARGET TELEPHONE #4** and 316-201-7677in addition to those provided to the CS.

31.     Your Affiant has probable cause to believe that information provided to agents     by the CS along with direct observations by agents is reliable.  Information obtained from the CS has been verified through investigative means.  Your Affiant believes based upon the aforementioned information that **CASTRO** is currently using **TARGET TELEPHONE #4** and 316-201-7677 in the furtherance of drug trafficking crimes.  Through debriefs and interviews with sources of information and the CS it is known that **CASTRO** normally has more than one cell phone in his possession while conducting drug transactions.

### AUTHORIZATION REQUEST

32.     Based on information obtained from the investigation of **Felipe CASTRO**, investigators believe that CASTRO is using his telephones to engage in illegal activities. Specifically, your affiant has probable cause to believe that the **TARGET TELEPHONE #4** is being used to commit the **TARGET OFFENSES**.

33.     Based on the foregoing, there is probable cause to believe that the requested information will lead to evidence regarding the activities described above.  Investigators are unable to conduct surveillance on **CASTRO**; the requested information is necessary to determine the approximate location of **CASTRO** and his co-conspirators so that law enforcement agents can conduct physical surveillance and properly identify **CASTRO.**

34.     WHEREFORE, pursuant to 18 U.S.C. Section 2703(c)(1)(A) and Rule 41, it is requested that the Court issue a warrant and Order authorizing the acquisition of the Requested Information and directing **AT&T**, the service provider for **TARGET TELEPHONE #4,** to initiate a signal to determine the location or the information from such programs as: Nextel Mobile Locator, Boost Mobile Loopt, Sprint/Nextel Findum

Wireless, or a similar program which will establish the approximate location of the **TARGET TELEPHONE** on the service provider's networks or with such other reference points as may be reasonably available and at such intervals and times as directed by the law enforcement agent serving the proposed order, and to furnish the technical assistance necessary to accomplish the acquisition unobtrusively and with a minimum of interference with such services as that provider accords the user(s) of the **TARGET TELEPHONE**, for a period of thirty (30) days. Reasonable expenses incurred pursuant to this activity will be processed for payment by the DEA.

35.    IT IS FURTHER REQUESTED that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **TARGET TELEPHONE** outside of daytime hours.

36.    IT IS FURTHER REQUESTED that the warrant and this affidavit, as it reveals an ongoing investigation, be sealed until further order of the Court in order to avoid premature disclosure of the investigation, guard against fugitives, and better ensure the safety of agents and others, except that working copies should be made available to the United States Attorney's Office, the DEA, and any other law enforcement agency designated by the United States Attorney's Office.

37.    IT IS FURTHER REQUESTED that, pursuant to 18 U.S.C. 2705(a)(1)(A), the Court authorize notice to be delayed for a period of 30 days after the termination of the monitoring period authorized by the warrant.

Thomas Krausch
Task Force Agent
Drug Enforcement Administration

Subscribed and sworn to before me on this ___ day of November, 2018.

Gwynne E. Birzer
United States Magistrate Judge
District of Kansas

**ATTACHMENT A**

**Property to Be Searched**

1.  The following target cellular telephone:

    a.  A cellular telephone with number **316-651-7920** (TARGET TELEPHONE #4); issued by AT&T USA; subscribed to Maricella TELLEZ at billing address 1119 S Breckenridge Ct. Wichita, Kansas 67207 being used by **Felipe CASTRO**

2.  Information about the location of the target cellular telephone that are within the possession, custody, or control of AT&T: including information about the location of the cellular telephone if they are subsequently assigned a different call number.

**ATTACHMENT B**

**Particular Things to be Seized**

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of AT&T, the phone carrier is required to disclose the Location Information to the government. In addition, AT&T must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T services, including by initiating a signal to determine the location of the Target Cell Phone on AT&T network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).